Terry L. Smith
PO BOX 60882
FAIRBANKS, AK 99706
(907) 488-8824

FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2006 SEP 19 PM 2: 05

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TERRY L. SMITH,<br>Plaintiff<br><br>Vs.<br><br><br>CSK AUTO INC,<br>d.b.a. SCHUCKS AUTO SUPPLY<br>AND DOE     Defendants | Superior Court No. 4FA-04-2053 CI<br><br>(4)-06-CV-000020-RRB |

### AFFIDAVIT OF PLAINTIFF ON MOTION FOR OPPOSITION TO STRIKE AMENDED COMPLAINT

STATE OF ALASKA        )
                       ) ss
U.S. DISTRICT COURT FOR )
THE DISTRICT OF ALASKA )

I Terry L. Smith first duly sworn, upon my oath and states: This affidavit is made on factual and Good faith:

1. Attached hereto as Exhibit A1 is a true and correct copy of a partial Compromise and Release agreement.

2. Exhibit A1 was brokered through Fraud and Duress against Plaintiffs freewill.

3. Exhibit A1 represents fraud and duress at its highest form.

4. Exhibit A1 has nothing to do with the current issues and does not fore close plaintiffs claim against Csk Auto Inc.

1

5. Exhibit A1 is being appealed to the workers compensation appeals commission case No 06-010 and has nothing to due with the currant issues that are before this court.

Further your Affiant sayeth Naught.

Dated for this 19 Day Of Sept ,2006 At Fairbanks, Alaska

By: _____

Subscribed and Sworn to before me this 19 Day Of Sept ,2006

By: _____
Notary Public in and for Alaska

My Commission Expires Sept 19 2009

AFFIDAVIT

FILED WITH
ALASKA WORKERS'
OCT 17 2002
COMPENSATION BOARD
FAIRBANKS, ALASKA

ALASKA WORKERS' COMPENSATION BOARD

675 SEVENTH AVENUE, STATION H2, FAIRBANKS, ALASKA 99701

| | | |
|---|---|---|
| TERRY L. SMITH, | ) | P.O. Box 60882 |
| | ) | Fairbanks, Alaska 99706 |
| Employee, | ) | |
| vs. | ) | |
| CSK AUTO, INC., | ) | 605 Old Steese Highway |
| | ) | Fairbanks, Alaska 99701 |
| Employer, | ) | |
| and | ) | |
| ROYAL AND SUNALLIANCE, | ) | P.O. Box 6506 |
| | ) | Englewood, Colorado 80155 |
| Insurer, | ) | |
| WILTON ADJUSTMENT SERVICE, | ) | P.O. Box 92670 |
| | ) | Anchorage, Alaska 99509-2670 |
| Adjuster, | ) | |
| LAW OFFICES OF ROBERT L. GRIFFIN, | ) | 1600 A Street, Suite 101 |
| | ) | Anchorage, AK 99501 |
| Their Attorneys. | ) | |

**RECEIVED OCT 21 2002 Law Offices of Robert L. Griffin**

Date of Injury : 03/29/2001
AWCB Case No. : 200106934

### PARTIAL COMPROMISE AND RELEASE

For the purpose of partial compromise and release, pursuant to the Alaska Workers' Compensation Act, AS 23.30.005 through AS 23.30.400, as amended, the parties hereby submit to the Alaska Workers' Compensation Board the following agreed statement of facts and, based thereon, settle all present and future claims in dispute relative to the issues of vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits, between the parties pursuant to said facts and said Act as follows:

### 1. INTRODUCTION

The employee, Terry L. Smith, sustained an injury on March 29, 2001 while employed at CSK Auto, Inc., as a parts delivery driver while unloading two cases of anti-freeze strapped together out of a truck. Mr. Smith was 47 years old at the time of injury. Mr. Smith had been employed at CSK Auto, Inc. since August 27, 2000 as a parts delivery driver.

---

PARTIAL COMPROMISE AND RELEASE                                                                 Page 1

I HAVE READ AND UNDERSTAND THE ABOVE INFORMATION.                              _____
                                                                                EMPLOYEE'S INITIALS

Robert L. Griffin
1600 A Street, Suite 101
Anchorage, Alaska 99501
Tel. (907) 274-5546  Fax (907) 272-7493

Exhibit A1

08/04/2006 10:42 FAX 9072727493    GRIFFIN&SMITH    ☒003/009

This Partial Compromise and Release waives the employee's right to vocational rehabilitation benefits and permanent total disability benefits <u>only</u>.

## 2. PAYMENT OF DISABILITY BENEFITS

The employee received TTD from March 30, 2001 through May 13, 2001, in an amount of $1,287.72. The employee received temporary partial disability benefits from May 14, 2001 through July 8, 2001, in an amount of $877.71. The employee received temporary total disability benefits from July 9, 2001 through August 19, 2001, in an amount of $1,201.86. The employee was paid temporary total disability benefits from August 20, 2001 through March 17, 2002 in the amount of $6,009.30. The employee is currently receiving temporary total disability benefits from March 18, 2002 and continuing, at the weekly rate of $200.31.

## 3. MEDICALS

Copies of all medical records in the possession of the employer and carrier/adjuster are attached hereto and incorporated herein by reference.

The employee's preinjury medical history is significant for a December 2, 1982 low back injury which occurred while employed for ARA Food Services. The employee sustained an acute traumatic lumbosacral strain in this injury, and was treated by C. A. Rublee, D.C., from December 9, 1982 through February 23, 1983.

On December 10, 1983, the employee sustained an injury while employed at Pay-N-Save. This was a low back injury that occurred while moving anti-freeze, and he recommenced treatment with Dr. Rublee. He was last seen by Dr. Rublee for this injury on April 2, 1984.

The employee was seen at Fairbanks Memorial Hospital Emergency Room on June 7, 2000, for acute low back pain secondary to a fall. He stated he could not "move his legs" after this incident.

The employee was first seen post-injury by Peter Marshall, M.D. on March 30, 2001, when he stated he was unloading two boxes of anti-freeze taped together and felt his back give out. He was taken off work on that date through April 4.

On April 4, 2001, he was seen by Helyn Lefgren, M.D., and was continued on off-work status. Dr. Lefgren diagnosed an acute muscle strain needing rest, muscle relaxers, and anti-inflammatories. Dr. Lefgren predicted a return to work in one week. Physical therapy was also ordered and Mr. Smith commenced treatment at North Pole Physical Therapy.

Mr. Smith was seen on referral by John T. Duddy, M.D. on April 18, 2001. At that time, his complaints were low back pain and right leg pain. Dr. Duddy ordered an MRI.

An April 21, 2001 MRI noted minor degenerative changes at L4-5 and a mild circumferential annular bulge at L5.

On April 25, 2001, Dr. Duddy referred Mr. Smith to Susan Klimow, M.D.

On May 2, 2001, Dr. Klimow saw Mr. Smith and her impression was lumbosacral back pain, with negative neurological examination. She prescribed physical therapy, Celebrex, Flexeril, and

1600 A Street, Suite 101  Anchorage, Alaska 99501  Tel. (907) 274-5546  Fax (907) 272-7493

Neurontin at night for a sleeping disability, and ordered an EMG for his right lower extremity pain. She also noted that he had longstanding tremors. Dr. Klimow also ordered a return to physical therapy. Dr. Klimow stated that he was partially disabled from work, and limited him to four hours a day, five days a week, with 20 pounds lifting occasionally, and 10 pounds frequently.

On May 8, 2001, Dr. Klimow performed bilateral SI injections and took Mr. Smith off work until May 13, with a partial return on May 14.

On May 8, 2001, Dr. Klimow reported that Mr. Smith's lower extremity EMG testing was normal, and her impression was lumbosacral back pain, with radiating pain into the lower extremities, possible sacroiliitis, with negative neurological exam and negative electromyography, degenerative disc disease at L4-5, and old osteophytes off the end plate of L5.

On May 21, 2001, Mr. Smith recommenced physical therapy at North Pole Physical Therapy.

On June 26, 2001, Dr. Klimow performed a lumbar epidural steroid injection.

On July 9, 2001, Mr. Smith was evaluated at OrthoSport/BEAR for an occupational therapy evaluation. Positive nonorganic signs were found with Waddell testing. John DeCarlo, OTR., noted that the patient was very deconditioned and self-limiting secondary to symptoms, and presented with nonorganic signs.

On August 6, 2001, Dr. Klimow wondered if he had an annular tear since his discomfort is not radiating. Dr. Klimow contemplated an IDET procedure, but requested an MMPI from Dr. Michael Rose prior to this.

On August 13, 2001, Allen Blizzard, PT performed a Physical Capacities Evaluation but found the test results inconsistent and might not truly reflect Mr. Smith's true physical capacities. Mr. Blizzard reported that the true strength demand level could not be determined based solely on this testing, and suggested further psychological counseling be considered along with treatment.

On August 14, 2001, Dr. Klimow found Mr. Smith medically stable as of August 6, 2001 and rated Mr. Smith at 5% whole person impairment pursuant to the Fifth Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment*.

On August 28, 2001, Dr. Klimow reported that she had received a short summary from Dr. Michael Rose indicating that conservative medical treatment of physical complaints was suggested.

On September 25, 2001, Dr. Klimow reported to Adjuster Susan Kosinski that the Physical Capacities Evaluation of August 13, 2001 indicated a strength demand level of light to sedentary, with the ability to lift 20 pounds from knuckle to shoulder level, and 10 pounds occasionally from floor to knuckle level. He could frequently walk, sit, and do stairs. He could occasionally stand, balance on one leg, stand and reach or crawl, but infrequently stoop, kneel, or squat and reach. The doctor further commented that there were no deficits in the upper extremity which would prohibit him from doing constant or repetitive fine motor control or grasping with his hands.

On November 14, 2001, Dr. Klimow reviewed job analyses and approved Mr. Smith to return to work as a hardware salesman and a sporting goods salesman. She also approved Mr. Smith to return

PARTIAL COMPROMISE AND RELEASE   Page 3
I HAVE READ AND UNDERSTAND THE ABOVE INFORMATION.   _____
   EMPLOYEE'S INITIALS

1000 A Street, Suite 101
Anchorage, Alaska 99501
Tel. (907) 274-5546   Fax (907) 272-7493

to work as an auto parts salesperson, and auto tire salesperson. Dr. Klimow did not approve a return to work in the job descriptions of route driver and stock clerk.

On December 26, 2001, Mr. Smith was seen by Roy Pierson, M.D., who diagnosed lumbar sprain/strain, and suggested an epidural cortisone injection. This procedure was performed by Dr. Pierson on January 10, 2002.

On February 6, 2002, Dr. Pierson commented that the January 10 epidural injection resulted only in transient benefit, he felt that Mr. Smith was not a surgical candidate, and referred him to Larry Stinson, M.D.

On April 8, 2002, Dr. Klimow again reviewed and approved the job description she had approved in February.

The last medical record in the possession of the employer and carrier/adjuster is a June 25, 2002 epidural steroid injection by Susan Anderson, M.D.

We have no record of the employee seeking medical treatment subsequent to that date.

### 4. PAYMENT OF MEDICAL BENEFITS

The employer and carrier/adjuster have paid to, or on behalf of, the employee $38,732.25 in medical benefits.

### 5. HISTORY OF THE EMPLOYEE'S COMPENSATION CLAIM

Subsequent to the employee's 2001 injury, responsibility for compensation benefits was accepted by the employer and carrier/adjuster, and payment of medical benefits was made as outlined above.

In late September of 2001, Adjuster Kosinski requested a vocational evaluation. On October 3, 2001, Douglas Cluff of Compensation Risk Consultants in Fairbanks was assigned to perform an eligibility evaluation. On December 17, 2001, Douglas Cluff, M.A, and Mark Thomas, Rehabilitation Specialist, recommended that the employee be found ineligible for vocational rehabilitation benefits. On January 8, 2002, RBA Douglas Saltzman determined that the employee was not eligible for vocational rehabilitation benefits. On January 15, 2002, the employee appealed the RBA's decision. Subsequent to that time, the parties arrived at this settlement agreement, which resolves the employee's claim for vocational rehabilitation benefits and permanent and total disability benefits.

### 6. REHABILITATION/REEMPLOYMENT

Rehabilitation/reemployment benefits are the subject of this Partial Compromise and Release and are being waived herein.

### 7. DISPUTE

There is a bona fide dispute between the parties. It is the position of the employee that he is entitled to vocational rehabilitation benefits.

PARTIAL COMPROMISE AND RELEASE                                                                 Page 4

I HAVE READ AND UNDERSTAND THE ABOVE INFORMATION.            _____
                                                              EMPLOYEE'S INITIALS

On the other hand, it is the position of the employer and carrier/adjuster that the RBA's decision of January 8, 2001 is based on substantial evidence. More particularly, the Vocational Rehabilitation Specialist found that the employee had held the positions of salesperson- auto accessories, auto parts sales, hardware sales, and sporting goods sales in the ten years prior to his work-related injury. On November 14, 2001, Dr. Klimow, the employee's treating physician, approved the employee to return to these positions. Further, on December 17, 2001, the Rehabilitation Specialist's Labor Market Survey indicated that these jobs existed within the local labor market. Therefore, the RBA's decision denying vocational rehabilitation/reemployment benefits is supported by substantial evidence and would be upheld in the pending appeal.

The parties agree that a number of disputes or potential disputes may exist or arise as a result of Mr. Smith's on-the-job injury. The parties agree that the disputes set forth herein reflect existing and potential disputes in that the disputes set forth herein may not encompass all disputes which could arise as a result of the on-the-job injury. The parties agree that the purpose and effect of the Partial Compromise and Release is to resolve all disputes which have or may arise as a result of Mr. Smith's on-the-job injury regarding vocational rehabilitation/reemployment, .041(k) benefits, and permanent total disability benefits. The parties contend that this Partial Compromise and Release is in the best interest of the employee, since he does not wish to be obligated to litigate this matter. There is a bona fide dispute between the parties regarding the above-referenced issues. The employee desires to compromise this case since he does not wish to litigate this matter. The employee recognizes he could receive substantially less compensation in the event the dispute was submitted to the Compensation Board. The employer and carrier/adjuster recognize that the applicant's claim for compensation could result in an award in excess of the amount of the settlement. Therefore, with these factors in mind, the parties desire to avoid further litigation and other expenses related to this claim and proceed with this settlement agreement.

## 8. RELEASE OF CLAIM

In order to resolve all disputes between the parties with respect to vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits, the employer and carrier/adjuster will pay to the employee the amount of TEN THOUSAND AND 00/100 DOLLARS ($10,000.00) for full consideration thereof. The employee accepts such compromise amount in full and final settlement, and in payment of all vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits to which the employee might be presently owed, or to which the employee might become entitled at any time in the future pursuant to the terms of the Alaska Workers' Compensation Act.

It is agreed that the employer and carrier/adjuster will be responsible under the terms of the Alaska Workers' Compensation Act for temporary total disability benefits which are continuing, for reasonable and necessary medical benefits which, although incurred in the future, are attributable to the condition described herein, and all other future benefits, but for vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits which are specifically waived herein. It is also agreed that the right of the employer and carrier/adjuster to contest liability for future benefits is not waived under the terms of this settlement agreement.

PARTIAL COMPROMISE AND RELEASE                                                                 Page 5
I HAVE READ AND UNDERSTAND THE ABOVE INFORMATION.
                                                                                    _____
                                                                                      EMPLOYEE'S INITIALS

*1600 A Street, Suite 101 Anchorage, Alaska 99501 Tel. (907) 274-5546 Fax (907) 272-7493*

## 9. RELEASE OF FUTURE LIABILITY

It is the intent of the parties to this agreement to compromise all vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits, which might be due to the employee pursuant to the terms of the Alaska Workers' Compensation Act. To this end and for such purpose, the parties agree that, upon approval of this Partial Compromise and Release by the Alaska Workers' Compensation Board, and payment of the amounts recited herein, this Partial Compromise and Release shall forever discharge the liability of the employer and carrier/adjusters to the employee and the heirs, beneficiaries, executors, and assigns of the employee, for vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits, which could be due or might be due in the future, pursuant to the terms and provisions of the Alaska Workers' Compensation Act. It is agreed that the employee's condition and disability, including any condition and disability which arose prior to the occurrence referred to herein, or which is unknown at the present time and which may arise in the future, or may be continuing and progressive in nature, and that the nature and extent of such condition and resulting disability, may not be fully known at this time. By execution of this Partial Compromise and Release, the employee acknowledges an intent to release the employer and carrier/adjuster from any and all liability for vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits, arising out of or in any way connected to the condition referred to above, and any known or as yet undiscovered disabilities, injuries or damages associated with such condition. This Partial Compromise and Release shall be effective in discharging the employer and carrier/adjuster of all liability for vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits, with respect to such condition. To this end, the parties mutually waive any right they may have to set aside this settlement agreement based upon any mistake of law or upon any changed condition or circumstance. Further, the parties agree that the payments made and the claims released under this agreement shall be final and binding, regardless of any change in the law or change in the interpretation of the law governing the parties' rights and responsibilities under the Alaska Workers' Compensation Act. This Partial Compromise and Release has no impact on any other form of benefit to which the employee has been, currently is, or will be entitled to as a result of his 3/29/2001 injury, but specifically waives only the employee's entitlement to past, present or future vocational rehabilitation/reemployment benefits, including .041(k) stipend benefits, and permanent total disability benefits. It is specifically agreed that this Partial Compromise and Release in no way waives or diminishes the employer's and carrier/adjuster's rights under AS 23.30.015.

## 10. EQUITABLE SETTLEMENT

It is agreed that there have been no representations by either the employer or carrier/adjuster, or any representative thereof, as to any rights or benefits to which the employee may or may not be entitled. It is further agreed that Mr. Smith has been made aware that he has the right to counsel, and how the payment of his counsel's fees would be covered under the provisions of the Alaska Workers' Compensation Act. The employee has selected Barbara Williams as his non-attorney representative. He further believes that this Partial Compromise and Release represents a fair and equitable settlement of this matter in his best interests.

PARTIAL COMPROMISE AND RELEASE                                              Page 6

I HAVE READ AND UNDERSTAND THE ABOVE INFORMATION.       _____
                                                         EMPLOYEE'S INITIALS

## 10. EQUITABLE SETTLEMENT

It is agreed that there have been no representations by either the employer or carrier/adjuster, or any representative thereof, as to any rights or benefits to which the employee may or may not be entitled. It is further agreed that Mr. Smith has retained the services of a non-attorney representative in connection with his compensation claim, and that non-attorney representative has made him aware of his rights and benefits under the Alaska Workers' Compensation Act. Barbara Williams has been involved in the negotiations of this settlement as outlined above, and Barbara Williams agrees that this Compromise and Release represents a fair and equitable settlement of this matter.

## 11. ATTORNEY'S FEES

No attorney fees are due or owing as a result of this settlement.

## 12. SECOND INJURY FUND

The employer will pay the statutory amounts required pursuant to AS 23.30.040(b) and AS 23.30.155 to the Second Injury Fund relative to the lump sum described in Section No. 8 of this settlement agreement.

STATE OF ALASKA          )
                         ) ss.
Fourth JUDICIAL DISTRICT )

I, Terry L. Smith, being first duly sworn, depose and state:

I am the employee named in the foregoing Partial Compromise and Release. I have read this Partial Compromise and Release and I have signed it freely and voluntarily for the uses and purposes therein stated.

DATED at Fairbanks Alaska, this 10th day of October, 2002.

_____
TERRY D. SMITH

On this 10th day of October, 2002, before me, the undersigned Notary Public in and for the State of Alaska, personally appeared Terry L. Smith, to me known and known to me to be the identical individual named in and who executed the foregoing instrument, and acknowledged to me that he signed the same freely and voluntarily for the uses and purposes therein stated.

SUBSCRIBED AND SWORN TO before me this 10th day of October, 2002.

_____
Notary Public in and for Alaska
My Commission Expires: 12/15/02

[Notary Seal: SONJA A. STOVALL NOTARY PUBLIC STATE OF ALASKA]

1600 A Street, Suite 101
Anchorage, Alaska 99501
Tel. (907) 274-5546  Fax (907) 272-7493

PARTIAL COMPROMISE AND RELEASE                                              Page 7
I HAVE READ AND UNDERSTAND THE ABOVE INFORMATION.      _____
                                                      EMPLOYEE'S INITIALS

APPROVED as to form and substance.

Workers' Compensation Alliance

*Barbara Williams*     DATED: 10-14-02
Barbara Williams

Law Offices of Robert L. Griffin
Attorneys for Employer

*Robert L. Griffin*     DATED: 10-11-02
Robert L. Griffin

Law Offices of Robert L. Griffin
Attorneys for Employer

*Christi C. Niemann*     DATED: 10-11-02
Christi C. Niemann, Certified Legal Assistant

Wilton Adjustment Service

*Susan Kosinski*     DATED: 10/11/02
Susan Kosinski, Senior Adjuster

## ORDER

The foregoing Partial Compromise and Release is hereby APPROVED.

DATED at FAIRBANKS, Alaska, this 17th day of October, 2002.



ALASKA WORKERS' COMPENSATION BOARD

PARTIAL COMPROMISE AND RELEASE     Page 8
I HAVE READ AND UNDERSTAND THE ABOVE INFORMATION.

EMPLOYEE'S INITIALS

*Robert L. Griffin*
1600 A Street, Suite 101
Anchorage, Alaska 99501
Tel. (907) 274-5546  Fax (907) 272-7493